**JEREMY GUTMAN**
ATTORNEY AT LAW
521 FIFTH AVENUE, 17TH FLOOR
NEW YORK, NEW YORK 10175

(212) 644-5200                                                                                            JGUTMAN@JEREMYGUTMAN.COM

May 27, 2025

**By ECF**

Hon. Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Singh
                  23 Cr. 236 (FB)

Dear Judge Block:

      I am writing on behalf of my client, Sagar Singh, who, at the age of 21, is scheduled to appear before the Court for sentencing on June 4, 2025, following his plea of guilty to conspiracy to access a computer without permission and aggravated identity theft. As reflected in the letters of support from family members submitted as exhibits to this memorandum, Sagar is a respectful and devoted son with considerable promise, and his involvement with a group that engaged in crimes over the internet arose in the wake of a troubled adolescence marked by a series of painful losses, culminating with the death of his father when Sagar was seventeen year old. Taking the circumstances of Sagar's life into account, we will urge the Court to conclude that the statutory sentence of two years that must be imposed with regard to aggravated identity theft is more than sufficient to achieve the purposes of sentencing in this case.

      **Sagar's History and Background**

      Sagar Steven Singh was born on November 4, 2003, into a close-knit family of recent immigrants from the Fiji Islands. As the only child of Suchendra ("Suchen") and Rittu Singh, he was raised not only by his parents but by his father's parents, Ram Sharan and Bodh Mati Sharan, whose nearby home shared a backyard with his. As Sagar's older cousin, Sheena Singh, recalls:

> We all grew up in Pawtucket, RI, an urban and low-income
> community. We lived on the same street, just one house apart,

Hon. Frederic Block
May 27, 2025
Page 2

> and were supported by aunts, uncles, and two doting grandparents. The love and support we received from our grandparents were instrumental in our upbringing, and we were fortunate to experience such a strong family bond. We were provided a life of community and love and didn't know we were "poor" until we went to college. [Exhibit B]

Another cousin, Shalina Mondesir, writes that Sagar "has always been bright, sharp and ahead of the kids his age" [Exhibit C], and Sagar's mother recalls that, as a child, he was "always respectful, always eager to do well" and that "[t]eachers would often tell me how well-behaved and hardworking he was." [Exhibit A] Inspired by his father, who was known for his love of soccer, Sagar became a devotee of the sport and loved to play with his friends after school. Cousin Sheena tells the Court that, as an honor roll student, his goal was to earn a soccer scholarship for college. [Exhibit B]

The trajectory of Sagar's life was disrupted at the age of thirteen by the death of his grandfather in March of 2017. As Ms. Mondesir notes, "[a]lthough he was old, his passing was sudden and heartbreaking for us all." [Exhibit C] Then, only three months later, on July 1, 2017, Sagar's grandmother died of cancer. Sheena describes how these significant family losses in close succession to one another affected Sagar both directly and, perhaps even more significantly, through their impact on his father:

> Sagar suddenly lost both of his live-in grandparents, both of whom loved him unconditionally. Three weeks after my grandmother passed away, I lost our first daughter in late pregnancy. This loss devastated the family, but especially my Uncle Suchen, Sagar's father. He was the uncle who took care of me and my sister when we were growing up, having lived with us as a teenager and only moving next door with my grandparents.
>
> Uncle Suchen, who had always been a pillar of strength for our family, began drinking heavily to cope with the grief. He had lived with his parents all his life and was deeply affected by their loss. Sagar, witnessing his father's struggle, began to see a different, darker side of life. [Exhibit B]

Hon. Frederic Block
May 27, 2025
Page 3

Later in the same year, Sagar's father learned that the employment through which he had supported his family for 23 years – as a sterilization technician at Memorial Hospital in Pawtucket – would come to an end. In October of 2017, the hospital announced that it would close early the following year. The loss of the hospital was devastating to the entire community, but had a particularly intense impact on the Singh family. Still grieving the loss of his parents, Suchen grew more and more depressed (without seeking treatment), soon gave up on finding another job, and became increasingly dependent on alcohol. Sagar, as a young teenager, bore the emotional strain of seeing the decline of the father he so dearly loved and of experiencing his family's growing financial insecurity.

In 2020, after an earlier hospitalization for liver disease, Suchen contracted Covid-19, and he died of the disease at the age of 43. Losing his father would have been painful under any circumstances, but was especially difficult because quarantine procedures meant Sagar could not visit his father during his final days in the hospital and had to say goodbye over FaceTime.

Like all of the family members who have written to the Court, Sheena recognizes the cumulative impact this series of family tragedies had on Sagar:

> The once lively household, which had been home to five people, was now reduced to just Sagar and his mother. Financially, they were struggling. My aunt worked part-time in retail, but the loss of my uncle's income and the retirement funds from my grandparents left them with very little. Sagar was left to navigate school and after-school life largely on his own.
>
> Despite the efforts of our family to support him, the weight of these responsibilities and the trauma he had experienced were too much for a young person to bear. [Exhibit B]

Unfortunately, the anguish and confusion brought about by these events coincided with a time when, because of the pandemic, remote learning replaced in-person schooling and social gatherings were discouraged. Sagar found himself spending more and more time alone in his room, engaging over the internet with people he knew only through their online identities.

Hon. Frederic Block
May 27, 2025
Page 4

### The Offense Conduct

It was through those online associations that Sagar became affiliated with the shadowy group known as ViLE, whose members bragged to one another about the methods they used to find and publish personal information about individuals on the internet. Although the members often justified their actions by ascribing despicable conduct to their targets, Sagar recognizes that there was no excuse for his participation in the group's exploits, and that those activities were not only wrongful, but criminal. As Rittu Singh tells the Court, the present prosecution was a "wake-up call" for Sagar and he is "deeply remorseful." [Exhibit A]

During his plea allocution, Sagar acknowledged that, in April and May of 2022, he agreed with another person to access a non-public website maintained by a federal agency, and that on May 7, 2022, he logged onto that site in order to gain access to its information, using credentials of another person that he did not have permission to use. That conduct established his guilt of conspiracy to commit computer intrusion that was unlawful under 18 U.S.C. §1030, in violation of 18 U.S.C. § 371 (Count One), as well as aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) (Count Two).

### The Guidelines

We agree with the Probation Department's determination that the adjusted offense level for Count One is 12 [PSR, ¶ 41], and that there should be a two-level reduction for acceptance of responsibility [U.S.S.G. § 3E1.1(a)] and a two-level reduction for zero criminal history points, resulting in a total offense level of 8 [PSR, ¶¶ 47-49]. For a defendant in criminal history category I, the corresponding advisory sentencing range is zero to 6 months.

We also agree that the guideline sentence for Count Two is the statutory term of two years [PSR, ¶ 42].

### A Sentence Well Below the Mandatory Minimum Term Would Be Sufficient to Achieve the Purposes of Sentencing in this Case

In determining an appropriate sentence, courts are guided by the sentencing statute's "overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the

Hon. Frederic Block
May 27, 2025
Page 5

public from further crimes of the defendant." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)).[1] In the present case, the minimum term required under 18 U.S.C. § 1028A will result in a sentence that is excessive by that standard.

In the absence of that statutory limitation, a below-guideline sentence would be warranted in view of the fact that Sagar was only 18 years old at the time he engaged in the conduct for which he has been convicted. As this Court observed earlier this year in *United States v. Kaziu*, No. 09-CR-660, 2025 WL 629873 (E.D.N.Y. Feb. 27, 2025), the Supreme Court has recognized "that a sentencer should have the ability to consider the mitigating qualities of youth . . . because it is a time of immaturity, irresponsibility, impetuousness, and recklessness" at "a moment and condition of life when a person may be most susceptible to influence and to psychological damage." *Id*. at 6 (quoting *Miller v. Alabama*, 567 U.S. 460, 476 (2012). The Court also cited with approval Justice Kennedy's statement, in *Roper v. Simmons*, 543 U.S. 551, 569 (2005), that "any parent knows . . . [that a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the youth." Your Honor also noted the significance of the 2024 amendment to the Guidelines that, in place of a policy limiting departures to cases in which considerations based on a defendant's age "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines," recognized without qualification that a downward departure "may be warranted due to the defendant's youthfulness at the time of the offense or prior offense." 2025 WL 629873 at 6, quoting U.S.S.G. § 5H1.1.

In connection with an application for reduction of a sentence imposed on a defendant convicted of a murder committed when he was 18 years old, the court in *United States v. Ramsay*, 538 F.Supp.3d 407 (S.D.N.Y. 2021)(Rakoff, J), drew on findings supported by neuroscientific, psychological, and sociological evidence regarding the adolescent brain when it concluded, *inter alia*, that:

> The need for just punishment corresponds to the moral culpability of an offense. Adolescents' immaturity, their susceptibility to peer influence, and their dependence mean their irresponsible conduct is not as morally reprehensible as

---

[1]Unless otherwise indicated, quotations in this letter omit all internal alterations, quotation marks, footnotes, and citations.

Hon. Frederic Block
May 27, 2025
Page 6

>that of an adult. Thus, a "just punishment" for an adolescent is usually less severe than a "just punishment" for a similarly situated adult.

*Id.* at 423. The court also recognized that, because "adolescents' characters are still developing and because adolescent crime is attributable, in part, to temporary inadequacies of the adolescent brain," there is both a lesser need to incapacitate and a greater likelihood of successful rehabilitation than in the case of a similarly-situated adult. *Id.*

These considerations should apply with particular force in Sagar's case. While adolescence is a time of tumult for most people, Sagar experienced a series of significant losses beginning at age thirteen that are far from typical. The loss of three loved ones who had been critical sources of nurturing and support shattered the secure home life he had previously known. Witnessing his father's despair and descent into alcoholism, followed by his untimely death, and bearing an outsized sense of responsibility toward his mother as she struggled to cope with these losses, undoubtedly had a profound affect on Sagar's psychological development and left him with deep emotional scars.

In view of these circumstances, we urge the Court to conclude that a sentence substantially below the two-year sentence that is statutorily mandated would be "sufficient, but not greater than necessary," to achieve a just sentence. Accordingly, we ask the Court to impose a sentence of time served with respect to Count One.[2]

Respectfully,

/s/
Jeremy Gutman
*Attorney for Defendant*
*Sagar Singh*

---

[2] For the reasons discussed in our letter to United States Probation Officer Maxine Marquez, which is submitted as Exhibit E, we contend that the Mandatory Victim Restitution Act ("MVRA") does not authorize an order of restitution in this case. While the issue may largely be moot because no claim for restitution has been submitted, we ask the Court to strike the paragraphs of the PSR suggesting that the MVRA applies here. We also object to the discretionary special conditions of supervised release recommended by Probation for the reasons presented in that letter, which we incorporate by reference.